**AMALGAMATED TRANSIT UNION, AFL–CIO, et al., Plaintiffs,**

v.

**Raymond J. DONOVAN, Secretary of Labor, et al., Defendants.**

**Civ. A. No. 82–2922.**

United States District Court, District of Columbia, Civil Division.

Nov. 2, 1982.

Linda R. Hirshman, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., Jeffrey R. Freund, Bredhoff & Kaiser, Washington, D.C., for plaintiffs.

Robert E. Seldon, Asst. U.S. Atty., Michael Martinez, U.S. Dept. of Transp., Dennis Paquette, U.S. Dept. of Labor, Washington, D.C., for defendants.

MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

I.

This matter comes before the Court on a motion for preliminary declaratory and injunctive relief filed by plaintiffs in this action, three locals of the Amalgamated Transit Union. The locals requesting relief are: Local 713 of Memphis, Tennessee, Local 1212 of Chattanooga, Tennessee, and Local 788 of St. Louis, Missouri and East St. Louis, Illinois. Plaintiffs request that the Court declare unlawful the Secretary of Labor's conditional certification that transit companies who employ plaintiffs' members are eligible to receive federal grant funds under the Urban Mass Transportation Act, 49 U.S.C. 1601 et seq. (UMTA). Plaintiffs urge the Court to review the Secretary's act under the Administrative Procedure Act, 5 U.S.C. 701 et seq., (APA). Plaintiffs further request that the Court enjoin the Secretary of Transportation and the Urban Mass Transit Administrator from disbursing said funds [1] to the following three transit companies: the Memphis Area Transit Authority (MATA), the Chattanooga Area Transit Authority (CARTA), and a system serving the St. Louis, Missouri and East St. Louis, Illinois area (Bi-State), who have requested approval for five separate grants.

Through UMTA, Congress desired to direct federal funds to public and private transit companies in urban areas who were interested in planning and developing improved urban mass transportation systems. 49 U.S.C. § 1601(b) (1963). As a means of improving mass transit service, cities were beginning to acquire private transit companies. Congress recognized that in many states this trend would result in the employees of the privately operated transit companies losing, among other collective bargaining rights, their right to strike, when they became public employees. To ensure that federal funds would not be appropriated to the new transit companies unless they gave their employees collective bargaining protections, Congress included

---

1. Plaintiffs originally requested a temporary restraining order on October 13, 1982. At the request of the Court, the Department of Transportation represented that no funds would be distributed to the transit companies in connection with the grants at issue until October 21, 1982, without giving 48 hours notice. Plaintiffs then agreed to defer the hearing on the temporary restraining order and consolidate it with a hearing on a motion for preliminary injunction, which was heard on October 21, 1982 on an expedited basis.

Section 13(c) in the Act. That Section provides,

> It shall be a condition of any assistance under [section 1602 of this Title] that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of reemployment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 5(2) of [this Title]. The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements. 49 U.S.C. § 1609(c).

The agreements which result from bargaining between transit companies and transit employees and which provide for such protections are referred to as Section 13(c) agreements.

Each plaintiff local has negotiated a collective bargaining agreement with its transit company. These agreements have, in the past, provided that bargaining impasses [2] will be resolved by submitting them to mandatory binding interest arbitration. The parties were engaging in collective bargaining concerning the terms of agreements for certain mass transit grants when the instant dispute arose. The locals' request for relief in this case was prompted when the transit companies advised the locals and Department of Labor that they would no longer agree to submit impasses to binding interest arbitration.[3] The Secretary of Labor responded by advising the transit companies that upon consideration of all circumstances, he would certify the agreements complied with Section 13(c) on the condition that the parties continued to negotiate regarding an alternative method for resolving bargaining impasses.[4] Plaintiffs assert that the statute directs the Secretary of Labor to certify that the agreements comply with Section 13(c) and approve disbursement of federal funds only when mandatory provisions for resolving "labor disputes"[5] are in place for the grant certification. His conditional certification, they argue, falls short of the statutory directive that protective arrangements include at the time of grant certification "such provisions as may be necessary for (1) the preservation of rights, privileges and benefits ... under existing collective bargaining agreements or otherwise; ... [and] (2) the continuation of collective bar-

---

**2.** Bargaining impasses occur where the parties are negotiating over terms to be included in a future collective bargaining agreement. When bargaining impasses occur there are several methods for resolving them. Among these methods are mediation, or fact-finding, and the method present in the 13(c) agreements at issue in this case, binding interest arbitration. These methods of arbitration are to be distinguished from grievance arbitration.

**3.** There has been substantial federal litigation between several unions and transit companies over the transit companies' refusal to be bound by the interest arbitration provisions of 13(c) agreements. In *Jackson Transit Auth. v. Local Division 1285,* —— U.S. ——, 102 S.Ct. 2202, 72

L.Ed.2d 639 (1982), the Supreme Court held that the unions could not sue the transit companies in federal court for transit company breaches of the agreements.

**4.** *See* n. 2, *supra* and Plaintiffs' Exhibits 7, 14 and 19.

**5.** All contracts at issue in this case contain provisions which broadly define the term "labor dispute." By virtue of these provisions then, "labor disputes" would not only encompass disputes over terms in existing collective bargaining agreements but also disputes arising during negotiations over terms to be included in new collective bargaining agreements.

gaining rights ...." 49 U.S.C. § 1609(c). According to plaintiffs, unless the flow of funds is enjoined, the transit companies will have no incentive to continue to bargain or agree to a method of resolving bargaining impasses; this will destroy the practical significance of the union's collective bargaining rights under Section 13(c).[6]

The defendants disagree, stating that the Secretary of Labor is clothed with such discretion that his action is not subject to review, that there is nothing in the statute itself or in the legislative history requiring a mandatory bargaining dispute resolution procedure such as demanded by the plaintiffs and, even if the Secretary's action is subject to judicial review, he did not abuse his discretion in conditionally certifying the fund applications. Before ascertaining if plaintiffs have demonstrated that they are entitled to injunctive relief, the Court must address the issue of whether it has jurisdiction to entertain plaintiff's suit.

## II.

In *Jackson Transit Auth. v. Local Division 1285,* —— U.S. ——, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982), the Supreme Court re-versed five Circuit Court of Appeals which found an implied federal cause of action under Section 13(c). The five courts reasoned that because federal funds were conditioned on the Secretary's approval of 13(c) agreements, a union aggrieved by a transit company's failure to comply with a provision in its 13(c) agreement had a federal cause of action. Based on its review of the legislative history of UMTA, the Court concluded that Congress did not intend, through Section 13(c), to create a body of federal law applicable to labor relations between local governmental entities and transit workers. *Id.* at 2209. The Supreme Court thus held that state courts were the appropriate forum in which to resolve these cases since they required the interpretation of a collective bargaining agreement. *Id.* at 2210. Thus, absent an independent source of subject-matter jurisdiction, such as diversity or pendent jurisdiction, a District Court lacks jurisdiction to hear a union's suit against a transit company for breach of a 13(c) agreement.

■ Of greater relevance to the nature of the allegations in this case is the history

---

**6.** At the time the temporary restraining order was filed plaintiffs' complaint was directed to the Secretary's conditional certification asserted in his letters to the transit companies. At the preliminary injunction hearing, plaintiffs asserted in oral argument and by way of reply memorandum that by virtue of statements contained in an affidavit of Hugh Reilly (Defendants' Exhibit 1), which was filed with defendant's opposition to the motion for preliminary injunction, that the Court should review the Secretary's certification policy as a whole on the ground it was illegal and not only with respect to the grants in question. In his affidavit, Hugh Reilly stated that it was the Secretary's judgment that UMTA does not mandate any particular form of impasse resolution procedure and, in a given set of circumstances, he would allow certification even where collective bargaining 13(c) agreements contained no provisions for resolving negotiating impasses. Plaintiffs argue that the Secretary has now stated that there is no requirement for an impasse resolution procedure to be substituted for the lost right to strike in contrast to past administrative practice and interpretation of UMTA.

On the present record, the Court does not read the Secretary's position as drastically as do the plaintiffs. The Reilly affidavit does not represent a reversal of the certification letters at issue but rather expressly states that the statute requires that 13(c) agreements contain provisions that are fair and equitable under all circumstances, and not necessarily any particular in-place mandatory or compulsory arbitration procedure for resolving bargaining disputes.

Absent any evidence that the Secretary has retracted the letters of certification he sent to transit companies, or that he has changed his enunciated policy with respect to the conditional approval of specific grants in question, the Court will decide this preliminary motion concerning these specific grants with reference to the evidence in the record before it. It should not at this preliminary injunction stage, grant ultimate relief to the plaintiff on the basis asserted in the reply memorandum.

While plaintiffs request injunctive relief against the Secretary of Transportation and the Urban Mass Transit Administrator, they do not direct their arguments to, or explain the legal basis for the Court's granting them relief against these officials separate from that directed to the Secretary of Labor.

of the mandamus claim presented to the District Court in *Jackson*. By this claim, the plaintiffs sought to compel the Secretaries of Labor and Transportation to enforce the 13(c) mandatory interest arbitration provision. The District Court held that it had no subject-matter jurisdiction to hear the mandamus claim. The Sixth Circuit Court of Appeals reversed and held that the District Court had subject-matter jurisdiction (at least to determine whether a cause of action existed) but remanded for it to enter a judgment dismissing the mandamus claim for failure to state a cause of action on which relief could be granted. *Local Division 1285 v. Jackson Transit Auth.*, 650 F.2d 1379, 1387–88 (6th Cir.1981). Because the dismissal of the Secretaries was not appealed, the Supreme Court did not have to address the issue of whether a federal district court would have jurisdiction to review the case when a union sued federal officials to enforce a provision in a 13(c) agreement. But it did comment that, strictly speaking, the District Court had jurisdiction under 28 U.S.C. § 1331 to hear the union's suit. *Jackson,* 102 S.Ct. at 2206, n. 6. The Court finds that the type of relief plaintiffs request in this suit is sufficiently similar to that requested of the District Court in *Jackson* for the Court to conclude that it does have jurisdiction to hear the unions' suit.[7]

### III.

On this motion for a preliminary injunction the Court must apply the standards laid down in *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). That case directs consideration of four factors: (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal?; (2) Has the petitioner shown that without such relief, it will be irreparably injured?; (3) Would the issuance of a stay substantially harm other parties interested in the proceedings; and (4) Where lies the public interest? These factors are relative to each other; a plaintiff who moves for a preliminary injunction "assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (1979), *quoting Charlie's Girls, Inc. v. Revlon, Inc.,* 483 F.2d 953, 954 (2d Cir. 1973) (per curiam).

### SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

■ To determine if the plaintiffs have a substantial likelihood of success on the merits, the Court must consider whether the Administrative Procedure Act provides a remedy by allowing judicial review of the decisions of the Secretary of Labor with respect to the certification of 13(c) agreements.[8] The Administrative Procedure Act, 5 U.S.C. 701 *et seq.,* allows judicial review of agency action unless the statute under which an administrator acts precludes it or where the decisions by the agency official are by law committed to agency discretion. 5 U.S.C. § 701(a)(2). The latter exception, on which defendant relies, is a relatively narrow one and has been interpreted by courts to encompass those situations where the decisions by the agency official are so guided by facts that there is no law to apply. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1970).

The federal courts which have discussed the interplay of the Administrative Procedure Act and Section 13(c) have held that the District Court is precluded from reviewing the Secretary's acts in situations similar to this case. In *Kendler v. Wirtz,* 388 F.2d 381 (3rd Cir.1968), the court stated that:

---

**7.** *See Kendler v. Wirtz,* 388 F.2d 381 (3rd Cir. 1968), discussed *infra.* (Court held it had subject-matter jurisdiction at least to determine that it could not review the Secretary of Labor's certification under 13(c).)

**8.** The APA does not provide an independent basis of subject-matter jurisdiction to review agency action. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

Nothing in the Urban Mass Transportation Act suggests that the exclusionary language of section 10 is inapplicable to the Secretary of Labor's required determination that protective arrangements adopted for the benefit of employees affected by a mass transportation project are "fair and equitable" and constitute "necessary" safeguards. To the contrary, the statutory standard is expressed in such general concepts that it requires and must contemplate the exercise of discretion in choice among various rational alternatives none of which can satisfy all demands of competing interests. Cf. *Duesing v. Udall,* 1965, 121 U.S.App.D.C. 370, 350 F.2d 748, cert. denied, 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667. Moreover, the absence of any provision in the Mass Transportation Act for judicial review of the Secretary's determination suggests that Congress recognized that the Secretary of Labor is at least as competent as a court to achieve such an accommodation of diverse and often conflicting social and economic interests as must be made in determining what employee protective arrangements incidental to mass transportation projects are "equitable" and "necessary." We are concerned here with a type of determination that "does not present questions of an essentially legal nature in the sense that legal education and lawyers' learning afford peculiar competence for their adjustment." Frankfurter, J., concurring in *Driscoll v. Edison Light & Power Co.,* 1939, 307 U.S. 104, 122, 59 S.Ct. 715, 724, 83 L.Ed. 1134. *Kendler* at 383.

*Kendler* is similar to the instant case in that the local union and its employees sought to enjoin the Secretary of Labor from certifying that fair and equitable arrangements had been made to protect employees' interests with respect to proposed federal grants to state agencies for the purpose of improving railroad commuter service. The employees claimed they would suffer some disadvantage in the way the contracts were drawn so as to cause a loss of jobs without concomitant protections as required by Section 13(c). The Court dismissed the complaint holding it could not review the decision of the Secretary under the APA since his decision was committed to agency discretion.

In *City of Macon v. Marshall,* 439 F.Supp. 1209 (M.D.Ga.1977), a city sued to compel the Secretary of Labor to find that its collective bargaining agreement complied with the requirements of Section 13(c). Relying on *Kendler,* the Court concluded that, based on the legislative history of UMTA, the court was precluded by the APA from reviewing the Secretary's decisions as to what was "fair and equitable" under the language of 13(c).

*Macon* is the flipside of this case. There, the Secretary refused to approve the agreement because it did not provide for the appropriate continuation of collective bargaining rights. In this context, the court stated:

> Thus, while this court has jurisdiction under 28 U.S.C. § 1331(a), plaintiff City of Macon's remedy in this court, *if there is a remedy,* is set forth in the Administrative Procedure Act, 5 U.S.C. §§ 701 through 706; and that remedy does not apply—is not available to the City of Macon in this court—if this lawsuit involves "agency action ... committed to agency discretion by law."

*Macon* at 1219 (emphasis in original), and further noted:

> All of this leads this court to conclude that § 13(c) of the Urban Mass Transportation Act, 49 U.S.C. § 1609(c), commits the agency action of determining the fair and equitable arrangements that will protect the interests of employees who have previously enjoyed collective bargaining rights, to the Secretary of Labor's discretion. This entire controversy surrounds the manner in which the Secretary is exercising that discretion. As such the action of the Secretary is "agency action ... committed to agency discretion by law" and is not to be reviewed or "second guessed" by this court.

*Id.* at 1223 (emphasis in original.)

In deciding whether these two cases and others cited below correctly interpret the

Secretary of Labor's role under UMTA, the Court is urged by plaintiffs that the exception precluding review does not apply because the Secretary's act is illegal since he has failed to fulfill the five prerequisites set forth in Section 13(c) with respect to the grants in question. Defendants assert that the interpretation of Section 13(c) in *Kendler* and *Macon* dictate the result in this case, and that, despite specific statutory guidelines, the Secretary is still afforded discretion to determine what arrangements are "fair and equitable" by considering all the relevant circumstances and by analyzing how the five statutory requirements can best be met. Defendants also assert that the legislative history and case law clearly demonstrate that the Secretary has "virtually unreviewable power." Indeed, a number of cases speak in terms of non-reviewability regarding action by the Secretary under UMTA. *Local Division 732 v. MARTA,* 667 F.2d 1327 (11th Cir.1982); *Local Division 589 v. Massachusetts,* 666 F.2d 618 (1st Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982); *Kendler v. Wirtz,* 388 F.2d 381 (9th Cir.1968); *City of Macon v. Marshall,* 439 F.Supp. 1209 (M.D.Ga.1977); *Congress of Railway Unions v. Hodgson,* 326 F.Supp. 68 (D.D.C.1971).

The Court finds a case from this District, *Congress of Railway Unions v. Hodgson,* 326 F.Supp. 68 (D.D.C.1971) to be instructive. In that case, Judge Corcoran held that the Rail Passenger Service Act, which contained the same five prerequisites as Section 13 of UMTA, committed the determination of what arrangements would provide employees with fair and equitable protection to the discretion of the Secretary of Labor and that Congress had not made the Secretary's certification in that regard subject to judicial review. *Congress of Railway Unions, supra* at 75.

■ Considering these decisions, and upon a review of the legislative history and the record in this case, the Court is not persuaded that the plaintiffs have demonstrated a substantial likelihood that they will prevail on the merits. It is unlikely that when the merits are reached the plaintiffs will be able to show that the Secretary's conditional approval was contrary to the basic standards set forth in the statute as more fully set forth *infra,* or that the Court may review the Secretary's decision as to his determination that the collective bargaining arrangements made in the grants at issue are fair and equitable. This conclusion is based in part on the Court's review of the case, the legislative history discussed *infra,* and the Court's review of the language of the statute. Therefore, for the reasons set forth herein, the plaintiffs have failed to meet their burden on the threshold issue and the preliminary injunction will be denied.

■ Even assuming *arguendo* that the Court is able to review the Secretary's decision, the Court would still find the plaintiffs have not met their burden on the likelihood of success. *See Congress of Railway Unions v. Hodgson,* 326 F.Supp. 68, 72–75 (D.D.C.1971). Such review of the Secretary's decision must be narrowly and carefully limited, *Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* and requires inquiry concerning whether the Secretary's conditional certification that the agreements at issue meet the requirements of Section 13(c) is an abuse of discretion. *Congress of Railway Unions v. Hodgson, supra.* In this posture, a review of the Secretary's certification is necessary to determine whether plaintiffs could demonstrate that the decision to certify was an abuse of discretion.

Plaintiffs assert that under *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1980), a cause of action exists to enjoin federal officials from dispensing funds to State and local governmental bodies that have not met the statutory prerequisites for receiving those funds. They urge that the appropriate relief in those instances is a cut-off of federal funds. The facts in both of these cases are sufficiently different from the facts in this case that the Court does not deem them to be controlling. In *Rosado,* a

welfare recipient challenged a determination by the Secretary of Health, Education and Welfare that a New York welfare program met criteria for receipt of federal aid. The court determined, by reference to specific standards, that the program did not qualify and upheld the District Court's grant of injunctive relief to plaintiff. In that case the Secretary's discretion was far more limited than in this case. *Pennhurst* is dissimilar because in that case the statute was interpreted to be solely a funding statute and did not provide for withdrawal of funds for a recipient's failure to comply with certain standards. *Kendler v. Wirtz* and *City of Macon v. Marshall, supra,* on the other hand, have specifically addressed judicial review of Section 13(c).

In *Kendler* and *City of Macon,* however, plaintiffs requested that the Court determine whether "fair and equitable" arrangements had been met. Those cases presented a challenge to an area that was wholly committed to agency expertise and discretion. The district courts properly determined that they would not conduct a review. In the instant case, however, plaintiffs raise the question of whether the statute envisioned that a conditional certification could be made when a grant application was not definite as to the method for resolving bargaining impasses.

Plaintiffs argue that the Court should review the Secretary's conditional certification because it demonstrates his approval of a collective bargaining arrangement with less than complete protection for transit workers and because a conditional certification is not allowed by the statute. Plaintiffs note that the original 13(c) agreements entered between the locals and transit companies required binding interest arbitration and that the Secretary subsequently certified those agreements as providing for, among the other requirements of 13(c), "the continuation of collective bar-

gaining rights." [9] They argue that the Secretary is now abandoning his mandate to ensure protection of transit workers' collective bargaining rights by certifying applications that do not measure up to what was previously allowed. The plaintiffs assert that a mandatory form of resolving impasses is necessary for the continuation of collective bargaining rights. The Court finds that the Secretary's action is one which should be given due deference, *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and must be upheld if it was based on consideration of relevant factors. *Ethyl Corp. v. E.P.A.,* 541 F.2d 1 (D.C.Cir.1976). Considering the legislative history of 13(c) and the recent case of *Local Division 589 v. Massachusetts,* 666 F.2d 618 (1st Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982), the Court is not convinced that plaintiffs will prevail on this aspect of their case if tried on the merits. By their request for injunctive relief, plaintiffs in essence ask the Court to force upon the Secretary of Labor arrangements that Congress deemed were not necessary for the certification of collective bargaining agreements. A brief review of the legislative history makes this clear.

During Congressional hearings, union officials urged adoption of language which would "[insure] the existence of authority for any employer and the bargaining representative of the employees to enter into enforceable arbitration agreements" and would require these protective arrangements, which included the above provision, "not be limited to employers of existing mass transportation systems but shall include employees employed on any new project, system, line, operation or facilities ..." [10] That these two provisions were rejected by Congress and do not now appear in Section 13 of UMTA demonstrates to the Court in the context of this preliminary

**9.** *See* Secretary's letters to the transit companies at Exhibits 5, 9, 11, 13, 16 and 17 to Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for a Temporary Restraining Order.

**10.** Urban Mass Transportation—1963: Hearings on H.R. 3881 Before the Comm. on Banking and Currency, 88th Cong., 1st Sess. 494–95 (1963) (proposed amendment to H.R. 3881).

**598**

injunction motion that Congress did not want to require a mandatory or enforceable form of impasse resolution[11] and did not want to require that the terms of collective bargaining agreements entered when transit companies first became public would have to continue in perpetuity.[12] Congress' rejection of these two proposals demonstrates not only a recognition that the Secretary would be able to consider which provisions, including different methods for resolving impasses, would satisfy all parties to a project, but also that he would not be bound to one type of provision over time.

■ Plaintiffs also take issue with the fact that the Secretary has chosen to conditionally certify the grants and insist that the Secretary can only certify the grants once all provisions are in place. The plaintiffs argue that the statute mandates that before he can certify that a grant application complies with 13(c), it must have in place a binding impasse resolution procedure or a quid pro quo to replace the lost right to strike. Without this, plaintiffs argue, the locals are reduced to "collective begging," not collective bargaining as contemplated by the statute. The plaintiffs have not demonstrated a substantial likelihood of success on the merits on this point as the Court finds support for an interim approach not only from the legislative history but from the specific regulations which guide the process of certification. First, as was noted above, the legislative history shows Congress' reluctance to specifically include in the provision that now states, "the continuation of collective bargaining rights," a particular method of "enforceable arbitration agreements." If the Secretary can certify without requiring any particular provision for an enforceable arbitration

agreement, it follows that he can conditionally certify agreements that have no impasse resolution procedures on the basis the parties will continue to negotiate in good faith for some such procedure. The Code of Federal Regulations applicable herein guides the Secretary in situations such as this one, where the parties have not reached agreement over certain provisions. The regulations state,

> If during the processing of an application the Secretary finds that the parties are unable to reach agreement, he will review the positions of the parties to determine appropriate action. *Such action may include the Secretary's determination of the terms and conditions upon which he will base his certification* or his refusal to certify for specified reasons. 29 C.F.R. § 215.3(f).

(Emphasis supplied.) Thus, the Secretary's conditional approval of the local unions' and transit companies' agreement to continue to arbitrate over an alternative method of impasse resolution appears to be within the standards of the statute and as such is not subject to judicial review or reversal. The Court notes that the unions and the transit companies have been told by the Secretary to negotiate in good faith over various other methods of impasse resolution beside interest arbitration.[13] If it is the policy of the Act to encourage negotiation over the terms of collective bargaining agreements, including some type of impasse resolution mechanism, then the Secretary's directions to the parties to continue negotiating should not be an abuse of discretion. On the present record before the Court, it would appear that the Secretary's conditional certification may be within his discretion, and that his decision to certify the

---

**11.** *Local Division 589 v. Massachusetts,* 666 F.2d 618, 634 (1st Cir.1981), *cert. denied,* — U.S. —, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982). This particular intent, the Court perceives, was part of the larger concern that 13(c) not preempt State law. During debate on the Act, and in response to concerns expressed by Senators Goldwater and Tower, Senator Williams stated, "... we must have a record that will show the bill does not preempt State law; it does not control or dominate with irrev-

ocable authority local situations." 109 Cong. Rec. 5416, 5417 (1963).

**12.** Urban Mass Transportation—1963: Hearings on S. 6 and S. 917 Before a Subcomm. of the Comm. on Banking and Currency, 88th Cong., 1st Sess. 317 (Senate Hearings) (testimony of Secretary of Labor Willard Wirtz).

**13.** Plaintiffs' Exs. 7, 14 and 19.

grants in question without an impasse resolution provision in place would not be a clear abuse of his discretion. Therefore, even under the standards of *Overton Park,* the plaintiffs are not likely to be able to prevail in this aspect of their allegations when the Court reaches the merits.

### THREAT OF IRREPARABLE INJURY

■ The essence of plaintiff's argument on this factor is that once federal funds are released, the transit companies will no longer have the incentive to continue bargaining over alternative methods of impasse resolution. While there is some obvious justification for this fear, plaintiffs would deem the injury to be more immediate and irreparable than it may actually be. First, the controversy in this case centers on only one term of a collective bargaining agreement, that of impasse resolution. Second, the Secretary's conditional certification is just that. His certification is not final; he has the ability to withdraw it should the unions and transit companies be unable to determine a method for resolving impasses or should the method they select not be suitable. The Secretary could then impose a resolution at his discretion. 29 C.F.R. § 215.3. Third, at least one of the plaintiff locals has faced such negotiation impasses before. Local 1212 and CARTA have been in disagreement over the force and effect of a binding interest arbitration provision since 1979.[14] The Secretary of Labor appears to have determined that at this time it is inappropriate to become involved in the negotiation proceedings affecting all three plaintiff locals, particularly while the status of the interest arbitration clauses are in litigation. The granting of the requested preliminary injunctive relief would amount to judicial intrusion into these proceedings

and would not be appropriate as it could in effect grant ultimate relief to the plaintiffs.[15] The Court concludes that plaintiffs have not shown that they will suffer immediate irreparable injury if they are denied preliminary injunctive relief.

### POSSIBILITY OF HARM TO OTHER PARTIES

■ The plaintiffs assert that the federal government will not be injured by delaying UMTA funds to the transit companies. The Court cannot take issue with this assertion. For there to be a complete analysis of this factor, the Court must consider the harm not only to the party opposing injunctive relief, but also to those parties not before the Court who may be *interested* in the proceedings. If injunctive relief were granted, the parties who would be immediately affected are the transit companies whose funding requests are before the Court. They would be prohibited from receiving federal funds under the UMTA grants. These funds would be used by MATA, for example, to reinstitute fixed route service, including Sunday and evening service for a twelve month period.[16] No other evidence has been offered by either party concerning the amount or purpose of the grants. In the absence of such evidence, the Court is unwilling to assume that the grant of injunctive relief would impose only a minimal hardship on the transit companies. On this factor, the Court is mindful that a grant of injunctive relief may have a rippling effect on negotiations over similar provisions around the country in this industry. Since there exists the potential for harm to parties interested in these specific proceedings as well as to those beyond the immediate controversy, the Court finds the balance of harm weighs in favor of denying injunctive relief.

---

**14.** Plaintiffs' Ex. 14.

**15.** In an unreported decision in *Local Division 1212 v. Chattanooga Area Regional Authority,* No. 1–81–462, slip op. at 7 (E.D.Tenn. Feb. 25, 1982), the late Judge Wilson denied the union's request for a preliminary injunction which would have commanded the transit company to proceed to arbitration. Judge Wilson reasoned that to do so would amount to a dispositive

resolution of the dispute between the union and transit company. The Court agrees with Judge Wilson's reasoning and finds it applicable to the dispute in this case.

**16.** Exhibit 1 to Affidavit of Hugh Reilly, attached to Defendant's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for a Preliminary Injunction.

**600**

THE PUBLIC INTEREST

In this case the public interest lies with the localities who would be the recipients of the UMTA funds. They have an interest in the continued operation of urban mass transit systems. The plaintiffs, on the other hand, are interested in ensuring that the collective bargaining agreements they enter with the transit companies for grants contain an adequate method for resolving negotiation impasses since they have lost their right to strike. As the Court noted in its discussion of the irreparable injury factor, the instant dispute concerns only one provision of a 13(c) agreement which the plaintiffs assert is demanded by the statute. The Court recognizes that the corollary to the Congressional purpose to provide adequate and efficient mass transit for the public is the Congressional desire to preserve the collective bargaining rights of organized workers. *Jackson, supra,* 102 S.Ct. at 2204.

However, the public interest is broader than the particular class of which the plaintiffs are a member. It must include the public as a whole as well as the localities who are the recipients of the UMTA funds. There is no question that the public interest lies in continued funding of the various projects. Such concerns as the viability of the mass transit system's continued uninterrupted operation outweigh the interests of plaintiffs herein in the context of this preliminary injunction request.

Accordingly, for the reasons stated, it is this 2nd day of November, 1982,

ORDERED, that upon consideration of the pleadings, memoranda of law, affidavits and exhibits, extensive oral argument and decisional authority, the plaintiffs' motion for a preliminary injunction be and it hereby is denied; and it is

FURTHER ORDERED, that the Court sets the following expedited schedule:

1. Discovery, if any, to be completed by January 8, 1983;

2. Dispositive motions to be filed by January 23, 1983. Reply briefs if appropriate to be filed simultaneously by January 30, 1983; and

3. Pretrial is set for February 17 and trial set for February 23. The Court will file a further order governing pretrial and trial.